ROTHENSIES, Collector of Internal Revenue, v. FIDELITY–PHILADELPHIA TRUST CO. et al.

No. 7042.

Circuit Court of Appeals, Third Circuit.

April 23, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Lyle M. Turner, Sp. Assts. to the Atty. Gen., for appellant.

George P. Orr, Orr, Hall & Williams, and Madison S. DuBois, all of Philadelphia, Pa., for appellees.

Before MARIS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

The question raised by this appeal is whether property bequeathed by a donee in the exercise of a general power of appointment, to the same persons in lesser estates who would have taken the property in its entirety under the will of the donor in default of appointment, passes in virtue of the exercise of the power within the meaning of § 302(f) of the Revenue Act of 1926, as amended, 26 U.S.C.A.Int.Rev. Code, § 811(f).

William Bucknell, a resident of Pennsylvania, died testate in 1890. He bequeathed to his daughter, Harriet M. Hopper, a share of the income for life from a trust fund with a general power of appointment by will as to a proportionate share in the corpus of the trust. In default of appointment by Mrs. Hopper, the trustees were to assign and convey the share of principal in the trust upon her death to her children in equal shares and to the children of any deceased child of hers, per stirpes.[1]

---

[1] The material provisions of William Bucknell's will are as follows:

"4th. All the rest, residue and remainder of my estate, I give, devise and bequeath to my trustees hereinafter named, upon the following trusts, viz.: * * *

"And the net income arising out of one other third of my said residuary estate, I order and direct my said trustees to pay over in quarterly payments from the day of my death in equal shares, to my four children by my first wife, viz. William Rufus Bucknell, Lavinia · Louise Little, wife of James H. Little, Sallie Erie Lippincott, wife of Craig Lippincott and Harriet Marie Hopper, wife of Harry S. Hopper, for and during the term of their respective natural lives so, however that the same shall not be liable in the hands of my said trustees to the debts contracts or engagements of my said children respectively, nor to pledge, assignment or anticipation thereof by my said children or any of them. And from and after the death of my said four children above named respectively, to pay, assign and convey the principal share of the one so dying, to such

Harriet M. Hopper, the daughter, also a resident of Pennsylvania, died May 11, 1934. By her last will, she devised and bequeathed the property, over which she had a power of appointment under her father's will, in trust with directions to her trustees to divide the income therefrom into a sufficient number of equal shares to pay one share to each of her children surviving her or to the issue of any deceased child, per stirpes, and one share to her surviving grandchildren and the issue of any deceased grandchild. Her will further provided that this distribution of income should continue until the death of her last surviving child, at which time the principal of the trust was to be divided equally among her then surviving grandchildren per capita and the surviving issue of any deceased grandchild per stirpes.[2] Mrs. Hopper left surviving her four children and no issue of any deceased child. By the limitations of her will, each of her four children took a one-fifth interest for life in the income from the trust and her grandchildren, as a class, took the remaining one-fifth of the income for the duration of the trust and the whole of the corpus in remainder as already stated.

The executors of Mrs. Hopper's will filed a federal estate tax return in which they included in her gross estate the full value of the property over which she had a general power of appointment and paid the federal tax on the corresponding net estate. Thereafter, the executors filed a claim for refund, alleging that the value of the beneficial interests which Mrs. Hopper's children took in the Bucknell property as restricted by the appointment in her will was improperly included as a part of her gross estate for federal estate tax purposes.

The claim for refund having been rejected, the executors of Mrs. Hopper's will instituted suit in the court below against the Collector for the recovery of the portion of the tax alleged to have been improperly assessed and collected. The plaintiffs' claim did not seek a refund of the tax paid in respect of the interests of Mrs. Hopper's grandchildren under her appointment, either as to their share of the income from the trust or the corpus in remainder. The amount of the plaintiffs' claim is not in dispute but merely their right to any refund. For want of a sufficient affidavit of defense, the court below entered judgment in favor of the executors for the amount of their claim with interest. From that judgment, the Collector took the present appeal.

The executors contend that, because of the devise over to the Hopper children under the will of William Bucknell in default of appointment by their mother, what the children received after the limitation placed upon the disposition of the property

---

persons and for such estates, as he or she may by his or her last will, direct, limit and appoint, and in default of such last will, then to pay, assign and convey the principal share of the one so dying to his or her children in equal shares, the children of a deceased child to take their parent's share, * * *."

[2] The will of Harriet M. Hopper in material part reads as follows:

"Second: Whereas, my father, William Bucknell, did by his Last Will and Testament and Codicil thereto, give to me power of appointment by Will over a certain portion or portions of his estate, now, I do direct that any and all property, real, personal, or mixed, over which I have power of appointment under said Will and Codicil, shall be paid and transferred to my Trustees, hereinafter named, their and each of their heirs, successors and assigns, In Trust, Nevertheless, for the following purposes.

* * * * *

."(b) I direct that the net income shall, quarterly, be divided into a sufficient number of equal shares, and one of said shares paid to each of my then surviving children, and one share divided, per stirpes, among the issue of each deceased child leaving issue, if any, and one share divided equally among all my then surviving grandchildren and the issue of deceased grandchildren, per stirpes, whether the respective parents of said grandchildren be living or dead. Said division of income shall continue until the death of my last surviving child, at which time the principal shall be divided equally among my then surviving grandchildren, per capita, and the surviving issue of any deceased grandchild, said issue to take the parent's share by representation, per stirpes. If, upon the death of my last surviving child, there be no issue of mine then surviving, the principal shall be distributed according to the intestate laws of the State of Pennsylvania as though I had died at that time, possessed thereof, and without issue."

The will also contains spendthrift provisions with respect to the principal and the income of the trust.

by the will of Mrs. Hopper, passed to them from the will of the donor and is, therefore, not to be included as a part of the donee's gross estate in determining her estate's liability for federal estate tax.

Section 302 of the Revenue Act of 1926, c. 27, 44 Stat. 70, as amended, 26 U.S.C.A. Int.Rev.Code, § 811, which prescribes the basis for determining the value of the gross estate of a decedent for federal estate tax purposes, provides, inter alia, that there shall be included the value at the time of death of all property, real or personal, " * * * (f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, * * *."

In Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, where the donee exercised a general power of appointment by appointing to the same persons who, as the remaindermen under the donor's will, would have taken the property in the same estates and interests had the power not been exercised, and where the appointees also elected to reject the donee's appointment, the Supreme Court held that nothing had passed in virtue of the exercise of the power within the meaning of § 302 (f) of the Revenue Act of 1926 and that the property so appointed was, therefore, not to be included in the gross estate of the donee.

The appellant argues that the decision in the Grinnell case, supra, depends upon the fact that the appointees there rejected the donee's appointment, as they were permitted to do under the law of New York (Matter of Lansing's Estate, 182 N.Y. 238, 74 N.E. 882) which governed the question of title in that case. Grinnell v. Commissioner of Internal Revenue, 2 Cir., 70 F.2d 705, 706. While the appointees' renunciation of the donee's bequest was of importance in doubly assuring that the property had not passed under the power, we think it is implicit in the opinion of the Supreme Court that, had the appointees in the Grinnell case not taken occasion to reject the appointment, the decision would have been the same because of the property law of New York governing the question of title. In Matter of Lansing's Estate, supra, which both the Supreme Court and the Circuit Court of Appeals for the Second Circuit cite and quote from with approval in the Grinnell case, the New York Court of Appeals said, at page 243 of 182 N.Y., at page 884 of 74 N.E., that "The attempt to execute the power was not effective, because it did nothing," and that it was "a mere form, with no substance". See 294 U.S. at page 157, 55 S.Ct. at page 355, 79 L.Ed. 825 and 70 F.2d at page 707 (Grinnell cases). If, therefore, the donee's exercise of the power was ineffectual, it can hardly be that the appointees' rejection of the donee's useless action was of controlling effect in determining whether the property passed in virtue of the donee's exercise of the power. The local law ruled the question as to the passage of the title regardless of the appointees' rejection of the donee's bequest.

As we view it, the thing of general and fundamental importance under the decision in the Grinnell case is whether the donee, in the exercise of a general power of appointment, appoints to the same persons who are the remaindermen under the donor's will in default of appointment where, under local law, property so appointed passes under the donor's will and not under the appointment. This conclusion, we believe comports with the decision of the Supreme Court in the Grinnell case, particularly in the light of the prior conflicting decisions among the courts of appeal.

It had been held by the Court of Appeals of the District of Columbia in Lee v. Commissioner of Internal Revenue, 61 App.D.C. 33, 57 F.2d 399, that a donee's appointment of property by will, in the exercise of a general power of appointment, to the same persons who would have taken the property under the will of the donor had the power not been exercised, constituted a "passing" of property within the meaning of § 402(e) of the Revenue Act of 1921, 42 Stat. 278 (similar to § 302 (f) of the Revenue Act of 1926) and that, accordingly, the property so appointed was to be included in the gross estate of the donee for the purpose of determining the federal estate tax. There was no rejection by the appointees of the donee's bequest in the Lee case.

Several years later, in Wear v. Commissioner of Internal Revenue, 3 Cir., 65 F.2d 665, this court, under testamentary circumstances substantially similar, held to the same effect as the ruling in the Lee case, with respect to § 302 (f) of the Revenue Act of 1926, notwithstanding that, by the law of Pennsylvania (the situs of

the property), the appointees took a vested remainder by the devise over under the donor's will in default of appointment, subject to its being divested by the donee's exercise of the power. Freeman's Estate (No. 1), 35 Pa.Super. 185, 189, approved by the Supreme Court of Pennsylvania in Freeman's Estate, 281 Pa. 190, at page 194, 126 A. 270; see, also, Potter's Estate, 13 Pa.Dist. & Co.R. 667, 669. The appointees in the Wear case likewise made no effort to elect as between the appointment and the devise over in default of appointment.

Then followed Grinnell v. Commissioner of Internal Revenue, 70 F.2d 705, where the Circuit Court of Appeals for the Second Circuit, in recognized disagreement with the decisions in the Wear and Lee cases, supra, held that the donee's bequest, in the exercise of a general power of appointment, to the same persons who would take as remaindermen under the donor's will in default of appointment did not constitute a passing of the property under the power within the meaning of § 302 (f) of the Revenue Act of 1926, the appointees also having rejected the donee's bequest.

Upon a writ of certiorari the foregoing conflict was resolved in favor of the decision in the Grinnell case, the Supreme Court saying at page 158 of 294 U.S., at page 356 of 55 S.Ct. 79 L.Ed. 825: "We granted the writ of certiorari in this case * * * because of an alleged conflict with Wear v. Commissioner [3 Cir.], 65 F.2d 665, and Lee v. Commissioner, 61 App.D.C. 33, 57 F.2d 399. The reasoning and conclusions of those courts and of the court below cannot be reconciled. We are of opinion that, to the extent of the conflict, the view of the former is wrong and that of the court below is right, and we hold accordingly."

If the appointees' rejection of the donee's bequest was of controlling importance to the decision in the Grinnell case, as the Collector argues, then the conclusions of the Circuit Courts of Appeals in the Wear and Lee cases, where the appointees did not reject, could have been reconciled with the conclusion of the Circuit Court of Appeals in the Grinnell case, where the appointees did reject; and the fact that the Supreme Court found the respective conclusions to be irreconcilable clearly implies that the question as to the incidence of the appointees' title depended for its solution upon the effect of the donor's and donee's wills under local law rather than upon the voluntary act of the appointees in receiving the property.[3]

In the Wear case, in addition to concluding that Congress had the constitutional authority to tax the exercise of a general power of appointment even though under local law the property passed under the donor's will and not under the power, this court gave as its opinion with respect to § 302 (f) of the Revenue Act of 1926 that Congress "intended the tax should be laid, not on property and therefore not to be bound by state rule of property, but on an event arising upon the death of the donee, that is, the exercise of a power of appointment effective on his death". [65 F. 2d 667.] It is thus apparent that the reasoning of this court's opinion in the Wear case was concerned primarily with the power of Congress to tax the transfer because a general power of appointment has been exercised rather than with the question whether the property actually passed by reason of the exercise of the power. And, the same may be said for the opinion in the Lee case. In direct opposition to this view the Circuit Court of Appeals for the Second Circuit said in the Grinnell case [70 F.2d at 708],—"We need not differ with the conclusion [in the Wear case] that it might be taxed, but we think it was not taxed by an act directed only at property 'passing under a general power of appointment' because there was no such property here. The appointees not only declined to take the gift, but *the appointment when exercised in favor of the same persons who would take irrespective of it was 'a mere form with no substance' which the law of New York that regulates the passage of title has refused to recognize.*" (Italics supplied.)

In affirming the decision in the Grinnell case, the Supreme Court said, at page 155 of 294 U.S., at page 354 of 55

[3] For an interesting discussion as to when property passes in virtue of the exercise of a general power of appointment so as to subject it to federal taxes as a part of the estate of the donee and also as to the immateriality of the appointees' election not to take under the power, in its relation to the question of title to the property appointed, see Powers of Appointment and the Federal Estate Tax, 52 Harvard Law Review, 929, at p. 933 et seq.

S.Ct. 79 L.Ed. 825, with respect to the scope of § 302 (f) of the Revenue Act of 1926, that "The crucial words are 'property passing under a general power of appointment exercised by the decedent by will' ". And in answering the contention of the government, the Supreme Court further said, at page 156 of 294 U.S., at page 355 of 55 S.Ct. 79 L.Ed. 825, that "The tax here does not fall upon the mere shifting of the economic benefits in property, but upon the shifting of those benefits by a particular method, namely, by their '*passing* under a general power of appointment,' and not otherwise. Acceptance of the government's contention would strip the italicized word of all meaning". It seems to us that it is hardly open to question any longer that where, under local law, appointed property does not pass by reason of the exercise of the power but passes under the will of the donor, § 302 (f) of the Revenue Act of 1926 does not require that the value of such property be included in the gross estate of the donee for the ascertainment of the property subject to the federal estate tax.

It is clear that under the law of Pennsylvania, which governs the question of title in the instant case (Restatement of the Law, Conflict of Laws, § 283), a devisee over under a donor's will in default of appointment who is also an appointee under the donee's will in the exercise of the power takes from the will of the donor and not from the donee. The law of Pennsylvania in such regard is similar to the law of New York by which the question of title was determined in the Grinnell case supra, 70 F.2d 705, 707.

The reason supporting this rule of property was set forth in Freeman's Estate, supra, where the Pennsylvania Superior Court, in an opinion later expressly approved by the Supreme Court of the State, said that,—"In the absence of an expressed contrary intention a legacy bequeathed in default of appointment, vests in the legatee on the death of the testator, subject to be divested by the exercise of the power of appointment: 4 Kent's Com., 324; Fearne on Remainders, 226; Perry on Trusts, sec. 250; Cunningham v. Moddy, 1 Vesey, 174. This is so because the power of appointment does not create an estate, nor hold it in abeyance. Its effect is to divest an estate which, but for the exercise of the power, would remain in the devisee or legatee." See, also, Potter's Estate, supra.

What therefore, of the devise over in default of appointment, remains undivested after the donee's exercise of the power passes under the will of the donor. As the whole includes all of its parts so does a fee embrace all of the estates that may be carved therefrom. Consequently, the effect of Mrs. Hopper's appointment to her children of an undivided one-fifth interest to each in the equitable estate in the property for life instead of an undivided one-fourth to each in the legal estate in fee, which they would have enjoyed had the power not been exercised, was merely to limit and thus reduce the extent of her children's already vested estates under the will of their grandfather and from whose will they derived their title. In substantially similar circumstances, it was held in Freeman's Estate, supra, that "As much of the estate bequeathed to the grandchildren under the [donor's] will as was not disposed of by [the donee] under the power, remained vested in his children, and is distributable according to the provisions of the will of [the donor]." Thus, as to the passing of title, an appointment to the same persons who would take as remaindermen in default of appointment is of no effect to the extent that the gift over in default of appointment continues undisturbed in the remaindermen.

It is, therefore, our opinion that the beneficial interests in the Bucknell property that the Hopper children took, as limited by the will of their mother, passed to them under the will of their grandfather, the donor, and not in virtue of their mother's exercise of her power. Consequently, the value of the property so appointed should not have been included in Mrs. Hopper's gross estate for federal estate tax determination. To the extent of the effect of its erroneous inclusion, the federal estate taxes on Mrs. Hopper's estate were overpaid. Accordingly, the judgment for refund was properly entered.

The judgment of the District Court is affirmed.